IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES SEITZ, ADMINISTRATOR OF THE ESTATE OF LAUREN E. SEITZ, DECEASED<br>754 Old Coach Road<br>Westerville, OH 43081 | : <br> : <br> : <br> : | |
| PLAINTIFF | : | Case No. __2:17CV524__ |
| vs. | : | Judge_____ |
| U.S. NATIONAL WHITEWATER CENTER, INC.<br>c/o Registered Agent,<br>Charles H. Rabon, Jr.<br>225 East Worthington Avenue<br>Charlotte, NC 28203 | : <br> : <br> : <br> : <br> : | Magistrate_____ |
| and | : | |
| RECREATION ENGINEERING AND PLANNING, INC.<br>c/o Registered Agent,<br>Gary M. Lacy<br>485 Arapahoe Avenue<br>Boulder, CO 80302 | : <br> : <br> : <br> : | |
| DEFENDANTS. | : | |

**PLAINTIFF'S COMPLAINT FOR WRONGFUL DEATH: DEMAND FOR JURY TRIAL**

Now comes Plaintiff, James Seitz, Administrator of the Estate of Lauren E. Seitz, Deceased, by and through counsel, and for said Plaintiff's Complaint as to and against Defendants, U.S. National Whitewater Center, Inc. and Recreation Engineering and Planning, Inc., jointly and severally, herein avers as follows:

1

## I. Parties

1. Plaintiff, James Seitz, is the duly appointed Administrator of the Estate of Lauren E. Seitz by virtue of appointment by the Probate Court of Franklin County, Ohio, in Case No. 579824.

2. A true and accurate copy of the Entry Appointing Fiduciary; Limited Letters of Authority issued by the Probate Court of Franklin County, Ohio is attached hereto as Exhibit "A".

3. Plaintiff brings this personal injury, wrongful death and survivorship action on behalf of himself as the lawful representative of the Estate of Lauren E. Seitz, Deceased, for the exclusive benefit of the next of kin and beneficiaries of Lauren E. Seitz (hereinafter "Lauren").

4. Lauren was born on December 30, 1997 and had a life expectancy under normal circumstances of 81.9 years.

5. Despite her normal life expectancy, Lauren passed away on June 19, 2016.

6. At the time of her death, Lauren was domiciled in the City of Westerville, Franklin County, Ohio.

7. Lauren is survived by her father, James H. Seitz, her mother, Heidi E. Seitz, and one minor sibling, all of whom are beneficiaries of this action.

8. Defendant, U.S. National Whitewater Center, Inc., is a non-profit corporation organized and existing under the laws of state of North Carolina with its principal place of business located at 5000 Whitewater Center Parkway, Charlotte, North Carolina 28214.

9. Defendant, Recreation Engineering and Planning, Inc., is a for-profit corporation organized and existing under the laws of the state of Colorado with its principal place of business located at 485 Arapahoe Avenue, Boulder, Colorado 80302.

## II. Jurisdiction

10. Plaintiff incorporates by reference hereto any and all allegations previously set forth herein.

11. This Court has original jurisdiction over the instant litigation pursuant to 28 U.S.C.A. §1332(a)(1).

12. Pursuant to 28 U.S.C.A. §1322(a)(1), jurisdiction properly rests with this Court as this civil action concerns a matter in controversy well in excess of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

## III. Venue

13. Plaintiff incorporates by reference hereto any and all allegations previously set forth herein.

14. Venue is proper in this Court pursuant to 28 U.SC.A. §1391(a) and 28 U.S.C.A. §1391(b)(2).

15. Pursuant to 28 U.S.C.A. §1391(b)(2), venue properly rests with this Court as a substantial part of the events giving rise to Plaintiff's claims occurred within this judicial district.

## IV. Facts

16. On June 4, 2016, Lauren, along with approximately forty (40) other individuals from Lauren's church, Church of the Messiah, participated in a mission trip.

17. The purpose of the mission trip was to travel to various locations within the United States as part of a Christian music tour.

18. While on the mission trip, Lauren and other church members visited the U.S. National Whitewater Center located in Charlotte, North Carolina on June 8, 2016.

19. The U.S. National Whitewater Center is an outdoor recreational park owned and operated by Defendant, U.S. National Whitewater Center, Inc.

20. The U.S. National Whitewater Center offers whitewater rafting, canoeing, kayaking, and other outdoor recreational activities to the general public for a fee.

21. Lauren and a number of other church members participated in whitewater rafting while visiting the U.S. National Whitewater Center on June 8, 2016.

22. While whitewater rafting, Lauren was thrown overboard causing Lauren's nose and head to go completely underwater.

23. Unbeknownst to Lauren, this seemingly inconsequential event caused her to come into contact with a carnivorous amoeba, *Naegleria fowleri*, a microscopic but deadly amoeba that was present throughout the entire whitewater feature of the U.S. National Whitewater Center.

24. Following the trip to the U.S. National Whitewater Center and the completion of the mission trip, Lauren and her church group returned to Westerville, Ohio on June 11, 2016.

25. Three days later, on June 14, 2016, Lauren began complaining of congestion in her sinus area.

26. On June 16, 2016, Lauren's condition deteriorated to the point where she was transported by ambulance to a nearby hospital.

27. On June 18, 2016, Lauren was diagnosed with primary amoebic meningoencephalitis due to an infection caused by *Naegleria fowleri*.

28. Lauren ultimately succumbed to the infection and died on June 19, 2016, only eleven days (11) after visiting the U.S. National Whitewater Center.

### V. *Naegleria Fowleri*

29. *Naegleria fowleri* is a microscopic amoeba the size of approximately one-third the width of a human hair that is ubiquitous to freshwaters all around the world, including the United States.

30. *Naegleria fowleri* is well recognized by outdoor recreational park designers, owners and operators, but not the public generally, as a danger to public health and safety that the public cannot reasonably discover on its own.

31. *Naegleria fowleri* is well recognized by outdoor recreational park designers, owners and operators, but not the public generally, to form protective cysts around its body as a defensive mechanism to enable it to successfully endure episodes of adverse environments such as adverse temperatures and toxins.

32. It is well recognized by outdoor recreational park designers, owners and operators, but not the public generally, that *Naegleria fowleri* grows abundantly in freshwater with temperatures between 86 degrees Fahrenheit and 107 degrees Fahrenheit.

33. *Naegleria fowleri* is well recognized by outdoor recreational park designers, owners and operators, but not the public generally, to present a special danger to children and young adults participating in recreational activities in waters containing the amoeba due to their immature immune systems.

34. The means of infection of *Naegleria fowleri* is well recognized by outdoor recreational park designers, owners and operators, but not the public generally, in that the amoeba transports itself up the nasal passage, across the cribriform plate of the skull, and into the brain where it consumes brain tissue causing flu-like symptoms and, ultimately, death.

35. The mortality rate of individuals infected with *Naegleria fowleri* is well recognized by outdoor recreational park designers, owners and operators, but not the public generally, as being over ninety-eight percent (98%).

36. It is well recognized by outdoor recreational park designers, owners and operators, but not the public generally, that *Naegleria fowleri* is readily killed by appropriate treatment of the water it lives in with chlorine at proper levels.

37. Appropriate protective measures against *Naegleria fowleri* are well known to outdoor recreational park designers, owners and operators, but not the public generally, and include, but are not limited to, the wearing of face masks that cover the nose, wearing nose plugs, or keeping one's nose above waters that may contain the amoeba.

38. It is well recognized by outdoor recreational park designers, owners and operators, but not the public generally, that *Naegleria fowleri* poses the highest risk to those individuals participating in freshwater recreational activities during the summer months, particularly in southern tier states.

39. It is well recognized by outdoor recreational park designers, owners and operators, but not the public generally, that *Naegleria fowleri* causes primary amebic meningoencephalitis ("PAM"), a disease of the central nervous system.

40. It is well recognized by outdoor recreational park designers, owners and operators, but not the public generally, that after the onset of symptoms, PAM progresses rapidly and usually results in death within a matter of days.

### VI. First Claim for Relief
### Negligence

41. Plaintiff incorporates by reference hereto any and all allegations previously set forth herein.

42. Defendant, U.S. National Whitewater Center, Inc., owed Lauren a duty of care while Lauren was lawfully participating in a paid whitewater rafting activity at the U.S. National Whitewater Center on June 8, 2016.

43. Defendant, U.S. National Whitewater Center, Inc., negligently breached its duty of care owed to Lauren by, *inter alia*, performing, or failing to perform, the following actions:

   a. failing to properly chlorinate the water at the U.S. National Whitewater Center to eliminate and/or reduce the dangers posed by *Naegleria fowleri*;

   b. failing to properly regulate the temperature of the water at the U.S. National Whitewater Center to eliminate and/or reduce the dangers posed by *Naegleria fowleri*;

   c. failing to properly regulate the turbidity of the water at the U.S. National Whitewater Center to eliminate and/or reduce the dangers posed by *Naegleria fowleri*;

   d. failing to train its employees as to the proper ways and means in which to regulate the water at the U.S. National Whitewater Center to eliminate and/or reduce the dangers posed by *Naegleria fowleri*;

   e. failing to warn visitors to the U.S. National Whitewater Center, including Lauren, as to the dangers posed by the untreated and unregulated water at the U.S. National Whitewater Center;

   f. failing to warn visitors to the U.S. National Whitewater Center, including Lauren, as to the dangers posed by *Naegleria fowleri*;

g.  failing to supply visitors to the U.S. National Whitewater Center, including Lauren, with nose plugs or face masks to protect its visitors from the unregulated water;

h.  failing to utilize a filtration system capable of protecting visitors to the U.S. National Whitewater Center, including Lauren, from the dangers posed by *Naegleria fowleri*; and

i.  failing to otherwise protect visitors to the U.S. National Whitewater Center, including Lauren, from the dangers posed by *Naegleria fowleri*.

44. Defendant, U.S. National Whitewater Center, Inc.'s negligence was the sole and proximate cause of Lauren's illness and, ultimately, her death on June 19, 2016.

45. Based upon the foregoing negligence claim, Plaintiff seeks judgment as to and against Defendant, U.S. National Whitewater Center, Inc., in an amount to be determined at trial but in excess of Seventy-Five Thousand Dollars ($75,000.00).

## VII. Second Claim for Relief
## Gross Negligence/Recklessness/Willful and Wanton Conduct

46. Plaintiff incorporates by reference hereto any and all allegations previously set forth herein.

47. The water quality at the U.S. National Whitewater Center was so poorly regulated and/or treated by Defendant, U.S. National Whitewater Center, Inc., that the same displays a conscious disregard for the safety of its visitors, including Lauren.

48. Specifically, the official report authored by the North Carolina Department of Health and Human Services following its investigation of the U.S. National Whitewater Center shortly after Lauren's death included the following findings:

8

a. all eleven (11) water samples collected at the U.S. National Whitewater Center shortly after Lauren's death tested positive for *Naegleria fowleri*;

b. one of the eleven (11) water samples collected at the U.S. National Whitewater Center shortly after Lauren's death had the highest concentration level of *Naegleria fowleri* ever recorded in the "natural environment";

c. *Naegleria fowleri* was present throughout the entire whitewater feature at the U.S. National Whitewater Center;

d. the turbidity level of the water at the U.S. National Whitewater Center shortly after Lauren's death was 6.7 NTUs, thirteen times (13x) higher than the acceptable turbidity level of a publicly regulated swimming pool or water feature;

e. the chorine level of the water at the U.S. National Whitewater Center shortly after Lauren's death was 0.05mg/L, ten times (10x) lower than the acceptable chorine level of a publicly regulated swimming pool or water feature;

f. the filtration system utilized at the U.S. National Whitewater Center had a pore size of 200 microns, fifty times (50x) larger than the pore size recommended by the Centers for Disease Control to protect against *Naegleria fowleri*;

g. the amount of organic material and sediment in the water at the U.S. National Whitewater Center created an environment where conditions were conductive to growth and amplification of *Naegleria fowleri*; and

9

  h. the faulty design of the whitewater feature at the U.S. National Whitewater Center, particularly the shallow channels, contributed to excessive water temperatures that were conductive to growth and amplification of *Naegleria fowleri*.

49. The North Carolina Department of Health and Human Services summarized its findings by concluding that "[t]he combination of high levels of *N. fowleri* and the likelihood of submersion and exposure to high-velocity water results in a risk of infection that is likely higher than the risk of infection from exposure to *N. fowleri* in the natural environment."

50. Stated differently, Lauren and other visitors had a higher likelihood of encountering *Naegleria fowleri* in the unregulated waters of the U.S. National Whitewater Center than they did by simply rafting in the nearby Catawba River.

51. All of the foregoing failures and omissions by Defendant, U.S. National Whitewater Center, Inc., establish gross negligence, recklessness, willful and wanton misconduct and/or a conscious disregard for the safety of visitors, including Lauren, to the U.S. National Whitewater Center.

52. Defendant, U.S. National Whitewater Center, Inc.'s gross negligence, recklessness and/or willful and wanton misconduct was the sole and proximate cause of Lauren's illness and, ultimately, her death on June 19, 2016.

53. Based upon the foregoing, Plaintiff seeks judgment as to and against Defendant, U.S. National Whitewater Center, Inc., in an amount to be determined at trial but in excess of Seventy-Five Thousand Dollars ($75,000.00) and for an award of punitive damages in an amount in excess of One Million Dollars ($1,000,000.00).

10
LOPEZ, SEVERT & PRATT CO., L.P.A.
Case 3:18-cv-00044-MOC-DSC Document 1 Filed 06/19/17 Page 10 of 18

## VIII. Third Claim for Relief
### Premises Liability

54. Plaintiff incorporates by reference hereto any and all allegations previously set forth herein.

55. At all times material hereto, Defendant, U.S. National Whitewater Center, Inc., was the tenant and occupier of the real property commonly known as the U.S. National Whitewater Center and bearing a common street address of 5000 Whitewater Center Parkway, Charlotte, North Carolina, 28214.

56. As tenant and occupier of the subject real property, Defendant, U.S. National Whitewater Center, Inc., had possession and control of the same.

57. As tenant and occupier of the subject real property, Defendant, U.S. National Whitewater Center, Inc., owed a duty to its business invitees, including Lauren, to maintain the real property in a reasonably safe condition.

58. As tenant and occupier of the subject real property, Defendant, U.S. National Whitewater Center, Inc., owed a duty to its business invitees, including Lauren, to properly warn its invitees of any dangers upon the property of which said Defendant had actual or constructive notice.

59. As tenant and occupier of the subject real property, Defendant, U.S. National Whitewater Center, Inc., owed a duty to its business invitees, including Lauren, to remove, repair, or otherwise remedy any dangers or defects upon the property of which said Defendant had actual or constructive notice.

60. As tenant and occupier of the subject real property, Defendant, U.S. National Whitewater Center, Inc., breached its duty of care owed to Lauren by failing to maintain the property in a reasonably safe condition, by failing to properly warn Lauren as to the dangers

11

upon the property of which it had actual or constructive notice, and/or by failing to remove, repair or otherwise remedy the dangers or defects upon the real property of which it had actual or constructive notice.

61. Defendant, U.S. National Whitewater Center, Inc.'s failure to maintain the property in a reasonably safe condition, and/or its failure to properly warn Lauren as to the dangers upon the property of which it had actual or constructive notice, and/or its failure to remove, repair or otherwise remedy the dangers or defects upon the real property of which it had actual or constructive notice was the sole and proximate cause of Lauren's illness and, ultimately, her death on June 19, 2016.

62. Based upon the foregoing premises liability claim, Plaintiff seeks judgment as to and against Defendant, U.S. National Whitewater Center, Inc., in an amount to be determined at trial but in excess of Seventy-Five Thousand Dollars ($75,000.00).

## IX. Fourth Claim for Relief
### Negligence in the Designing, Engineering and Planning of the U.S. National Whitewater Center

63. Plaintiff incorporates by reference hereto any and all allegations previously set forth herein.

64. Defendant, Recreation Engineering and Planning, Inc., was responsible for designing, engineering, and/or planning the construction of the outdoor recreational center commonly known as the U.S. National Whitewater Center.

65. Defendant, Recreation Engineering and Planning, Inc., knew or should have known that the U.S. National Whitewater Center would be open to the general public and that it owed a duty to the general public, including Lauren, to design, engineer, and plan for the

construction of an outdoor recreational center that would be safe from detect and protect the health of the general public.

66. Defendant, Recreation Engineering and Planning, Inc., breached its duty of care to the general public, including Lauren, by negligently designing, engineering, and planning the U.S. National Whitewater Center.

67. Defendant, Recreation Engineering and Planning, Inc.'s negligence includes, but is not limited, to the following:

    a. designing and engineering shallow channels in the whitewater feature of the U.S. National Whitewater Center that encouraged and facilitated the growth of *Naegleria fowleri* through increased water temperature;

    b. designing and engineering the filtration system utilized at the U.S. National Whitewater Center with a pore size of 200 microns, fifty times (50x) larger than the pore size recommended by the Centers for Disease Control to protect against *Naegleria fowleri*; and

    c. designing and engineering the filtration system utilized at the U.S. National Whitewater Center that was neither intended to, nor capable of, adequately protecting the general public, including Lauren, from *Naegleria fowleri*.

68. Defendant, Recreation Engineering and Planning, Inc.'s negligence in failing to properly design, engineer, and/or plan the outdoor recreation center commonly known as the U.S. National Whitewater Center was the sole and proximate cause of Lauren's illness and, ultimately, her death on June 19, 2016.

13
LOPEZ, SEVERT & PRATT CO., L.P.A.
Case 3:18-cv-00044-MOC-DSC   Document 1   Filed 06/19/17   Page 13 of 18

69. Based upon the aforementioned negligence, Plaintiff seeks judgment as to and against Defendant, Recreation Engineering and Planning, Inc., in an amount to be determined at trial but in excess of Seventy-Five Thousand Dollars ($75,000.00).

## X. Fifth Claim for Relief
## Wrongful Death

70. Plaintiff incorporates by reference hereto any and all allegations previously set forth herein.

71. As a direct and proximate result of the Defendants' negligence and/or gross negligence and/or premises liability, Lauren's beneficiaries have suffered and will continue to suffer Lauren's loss of support, services, society, companionship, consortium, care, assistance, attention, protection, advise, guidance, counsel, instruction, training and education.

72. Lauren's beneficiaries at the time of her death suffered damages for loss of prospective inheritance.

73. Lauren's beneficiaries have suffered and will continue to suffer damages for mental and physical anguish caused by Lauren's untimely death.

74. As a result of Lauren's untimely death, reasonable funeral and burial expenses, and other miscellaneous expenses have been incurred.

75. Based upon the wrongful death claim, Plaintiff seeks judgment as to and against Defendants, U.S. National Whitewater Center, Inc. and Recreation Engineering and Planning, Inc., jointly and severally, in an amount to be determined at trial but in excess of Seventy-Five Thousand Dollars ($75,000.00).

## XI. Sixth Claim for Relief
## Survivorship Claim

76. Plaintiff incorporates by reference hereto any and all allegations previously set forth herein.

77. As a direct and proximate result of the Defendants' negligence, and/or gross negligence, and/or premises liability, Lauren experienced profound pain and suffering, illness, and severe emotional distress, all up to and including the time of her death.

78. Based upon the survivorship claim, Plaintiff seeks judgment as to and against Defendants, U.S. National Whitewater Center, Inc. and Recreation Engineering and Planning, Inc., jointly and severally, in an amount to be determined at trial but in excess of Seventy-Five Thousand Dollars ($75,000.00).

**WHEREFORE,** Plaintiff, James Seitz, Administrator of the Estate of Lauren E. Seitz, Deceased, by and through counsel, prays for judgment as to and against Defendants, U.S. National Whitewater Center, Inc. and Recreation Engineering and Planning, Inc., as follows:

   a. As to Plaintiff's First Claim for Relief, judgment as to and against Defendant, U.S. National Whitewater Center, Inc., in an amount to be determined at trial but in excess of Seventy-Five Thousand Dollars ($75,000.00);

   b. As to Plaintiff's Second Claim for Relief, judgment as to and against Defendant, U.S. National Whitewater Center, Inc., in an amount to be determined at trial but in excess of Seventy-Five Thousand Dollars ($75,000.00) and for an award of punitive damages in an amount in excess of One Million Dollars ($1,000,000.00);

   c. As to Plaintiff's Third Claim for Relief, judgment as to and against Defendant, U.S. National Whitewater Center, Inc., in an amount to be determined at trial but in excess of Seventy-Five Thousand Dollars ($75,000.00);

LOPEZ, SEVERT & PRATT CO., L.P.A.

15

Case 3:18-cv-00044-MOC-DSC   Document 1   Filed 06/19/17   Page 15 of 18

d. As to Plaintiff's Fourth Claim for Relief, judgment as to and against Defendant, Recreation Engineering and Planning, Inc., in an amount to be determined at trial but in excess of Seventy-Five Thousand Dollars ($75,000.00);

e. As to Plaintiff's Fifth Claim for Relief, judgment as to and against, Defendants, U.S. National Whitewater Center, Inc., and Recreation Engineering and Planning, Inc., jointly and severally, in an amount to be determined at trial but in excess of Seventy-Five Thousand Dollars ($75,000.00);

f. As to Plaintiff's Sixth Claim for Relief, judgment as to and against, Defendants, U.S. National Whitewater Center, Inc., and Recreation Engineering and Planning, Inc., jointly and severally, in an amount to be determined at trial but in excess of Seventy-Five Thousand Dollars ($75,000.00);

g. post-judgment interest at the highest amount available to be awarded under the law;

h. Any and all court costs incurred by Plaintiff and associated with this action; and

i. Any and all further relief at law or at equity available to Plaintiff.

Respectfully submitted,

Jose M. Lopez (#0019580)
LOPEZ, SEVERT & PRATT CO., L.P.A.
18 East Water Street
Troy, Ohio 45373
(937) 335-5658/ (937) 335-8943 (FAX)
Email: jml@lsplaw.org
Trial Attorney for Plaintiff

16

LOPEZ, SEVERT & PRATT CO., L.P.A.

## JURY DEMAND

Now comes Plaintiff, James Seitz, Administrator of the Estate of Lauren E. Seitz, Deceased, by and through counsel, and pursuant to Rule 38 of the Federal Rules of Civil Procedure herby demands a jury trial on all issues so triable.

Respectfully submitted,

/s/ Jose M. Lopez
Jose M. Lopez (#0019580)
LOPEZ, SEVERT & PRATT CO., L.P.A.
18 East Water Street
Troy, Ohio 45373
(937) 335-5658/ (937) 335-8943 (FAX)
Email: jml@lsplaw.org
Trial Attorney for Plaintiff

PerfectForm F2.05

PC-E-4.5 (Rev. 10-2000)

# PROBATE COURT OF FRANKLIN COUNTY, OHIO
## ROBERT G. MONTGOMERY, JUDGE

ESTATE OF Lauren E. Seitz _____, DECEASED

CASE NO. 579824

## LIMITED
## ENTRY APPOINTING FIDUCIARY; LETTERS OF AUTHORITY
[For Executors and all Administrators]

Name and title of fiduciary Administrator            James Seitz

On hearing in open court the application of the above fiduciary for authority to administer decedent's estate, the Court finds that:

Decedent died [check one of the following] ☐ testate ☒ intestate on June 19, 2016 ; domiciled in Westerville, Franklin County, OH

[Check one of the following] ☐ Bond is dispensed with by the Will- ☒ Bond is dispensed with by law

☐ Applicant has executed and filed an appropriate bond, which is approved by the Court; and

Applicant is a suitable and competent person to execute the trust.

The Court therefore appoints applicant as such fiduciary, with the power conferred by law to administer fully decedent's estate. This entry of appointment constitutes the fiduciary's letters of authority. No assets may be delivered to the administrator.

JUL 20 2016
Date

Todd D. Severt #0060076
Jonathan S. Zweizig #0069381
Lopez, Severt & Pratt Co., L.P.A.
18 East Water Street, Troy, OH 45373
(937) 335-5658; fax (937) 335-8943
Email: jonz@lsplaw.org

ROBERT G. MONTGOMERY

## CERTIFICATE OF APPOINTMENT AND INCUMBENCY

The above document is a true copy of the original kept by me as custodian of the records of this Court. It constitutes the appointment and letters of authority of the named fiduciary, who is qualified and acting in such capacity.

ROBERT G. MONTGOMERY
Judge and Ex-Officio Clerk

FILED #9
JUL 20 2016
Robert G. Montgomery, Judge
Franklin County Probate Court

By _____ Deputy Clerk
Date JUL 20 2016

FORM 4.5 - ENTRY APPOINTING FIDUCIARY: LETTERS OF AUTHORITY

EXHIBIT
A