UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:18-cv-00044-MOC-DSC

| | | |
|---|---|---|
| JAMES SEITZ, ADMINISTER OF THE ESTATE OF LAUREN E. SEITZ, DECEASED, | ) ) ) | |
| Plaintiff, | ) ) | |
| Vs. | ) ) | ORDER |
| U.S. NATIONAL WHITEWATER CENTER, INC; RECREATION ENGINEERING AND PLANNING, INC.; LIQUID DESIGN, P.C., | ) ) ) ) ) | |
| Defendants. | ) | |

**THIS MATTER** is before the court on defendant Liquid Design, PC's (hereinafter "defendant") Motion to Dismiss for Failure to State a Claim (#53). Having considered defendant's motion and reviewed the pleadings, the court enters the following Order.

I. **Background**

This action was commenced by plaintiff, who is the administrator of the estate of his daughter, Lauren Seitz. Plaintiff brings a negligence claim against defendant for the designing, engineering, and planning of the U.S. National Whitewater Center. In June 2016, while on a mission trip with her church, Lauren went whitewater rafting at U.S. National Whitewater Center. While rafting there, Lauren was thrown overboard and came into contact with a carnivorous amoeba, *Naegleria fowleri*. Lauren died eleven days after visiting the U.S. National Whitewater Center from primary amoebic meningoencephalitis, a disease of the central nervous system, which was due to an infection caused by *Naegleria fowleri*.

Plaintiff asserts three claims for relief against defendant: 1) negligence in the designing, engineering and planning of the U.S National Whitewater Center, 2) wrongful death, and 3)

1

survivorship. All allegations against defendant relate to its alleged negligence in design. Specifically, plaintiff alleges that defendant was negligent in designing and engineering the shallow channels of the whitewater feature and negligent in the designing and engineering the filtration system utilized by the U.S. National Whitewater Center. Both the channels and the filtration systems were completed by January 2, 2007.

Since the jurisdiction of the court is based upon diversity jurisdiction, the substantive law of North Carolina applies. The North Carolina General Statutes provide a six-year statute of repose. See N.C. Gen. Stat. § 1-50. The statute reads, as follows:

> No action to recover damages based upon or arising out of the defective or unsafe condition of an improvement to real property shall be brought more than six years from the later of the specific last act or omission of the defendant giving rise to the cause of action or substantial completion of the improvement.

Id. The statute then clarifies that actions arising out of the defective or unsafe condition of an improvement includes actions to recover damages for "personal injury, death . . . damage to property," "economic or monetary loss," and "actions in contract or in tort or otherwise." Id.

The instant motion is limited solely to dismissal of the claims against defendant. Defendant contends that its Motion to Dismiss should be granted because the plaintiff's claims for relief are based on actions alleged to have taken place more than eleven years prior to the filing of the Amended Complaint. As such, defendant argues that plaintiff's claims are barred by the six year statute of repose. Plaintiff contends that a "disease exception" to the statute exists, meaning the six-year bar would not be applicable to the facts of this case. In response, defendant counters that the statue applies more broadly to "actions in contract or tort or otherwise," N.C. Gen. Stat. § 1-50(a)(5)(b)(5), and even more broadly to all "actions against any person . . . who performs or furnishes the design, plans, specifications, surveying, supervision, testing or observation of construction, or construction of an improvement to real property." Essentially, defendant argues

2

that even if diseases are not personal injury, diseases are included in actions in tort or actions against engineers and thus plaintiff's claim remains time-barred.

## II. Legal Standard

A motion to dismiss "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009). To survive such motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully," as "threadbare recitals of the elements of a cause of action supported by mere conclusory statements" are insufficient to defeat a Rule 12(b)(6) motion. Id.; see also Twombly, 550 U.S. at 547 (complaints will be dismissed when plaintiffs "have not nudged their claims across the line from conceivable to plausible"); Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (4th Cir. 2011).

Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. Fed. R. Civ. P. 8(a)(2). Such statement does not require "specific facts," but need only give defendants "fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Twombly, 550 U.S. at 544). For purposes of the motion, the factual allegations in the complaint are accepted as true and viewed in the light most favorable to the non-moving party, Coleman v. Md. Court of Appeals, 6266 F.3d 187, 189 (4th Cir. 2010), though the court need not accept "unwarranted inferences" or "unreasonable arguments." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). The court also notes that "[a] Rule 12(b)(6) motion 'does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" Pisgah Laboratories, Inc. v. Mikart, Inc., 2015 WL 996609, at *2

3

(W.D.N.C. Mar. 5, 2015) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)).

As for timeliness, "whether a cause of action is barred by the statute of limitations is a mixed question of law and fact. However, when the bar is properly pleaded and the facts are admitted or are not in conflict, the question of whether the action is barred becomes one of law." Pembee Mfg. Corp. v. Cape Fear Constr. Co., 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985). The North Carolina real property improvement statute establishes a six-year statute of repose in which a claimant must bring an action. N.C. Gen. Stat. § 1-50(a)(5)(a). Generally, the six-year period commences upon when the negligent conduct occurs. Dawson v. N.C. Dep't of Env't & Natural Res., 694 S.E.2d 427 (N.C. Ct. App. 2010). Should a claimant fail to file suit within that period, then "summary judgment is proper if the pleadings or proof show without contradiction that the statute of repose has expired." Bryant v. Don Galloway Homes, Inc., 556 S.E.2d 597, 600 (N.C. Ct. App. 2001).

**III. Discussion**

Plaintiff argues that while N.C. Gen Stat. §1-50(a)(5) establishes a six-year statute of repose, the particular facts at hand fall within the "disease exception" to the statute, and thus the six-year bar does not apply. Specifically, plaintiff contends that disease is not a latent injury and "should not be included within a statute of repose directed at personal injury claims unless the Legislature expressly expands the language to include it." Hyer v. Pittsburgh Corning Corp., 790 F2d 30, 34 (4th Cir. 1986) (citing Gardner v. Asbestos Corp, Ltd., 634 F. Supp. 609, 612 (W.D.N.C. 1986). See also Wilder v. Amatex Corp., 336 S.E. 2d 66 (N.C. 1985); Stahle v. CTS Corp., 817 F. 3d 96, 100 (4th Cir. 2016) (noting that the disease exception is directed at personal injury statutes of repose).

Plaintiff notes that to date, no appellate court of North Carolina has directly addressed whether N.C. Gen. Stat § 1-50 (a)(5) applies to disease claims. As such, the court "must determine how the Supreme Court of [North] Carolina would rule." Twin City Fires Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In determining state law, the court "must look first and foremost to the law of the state's highest court, giving appropriate effect to all its implications." Assicurazionioni Generali S.p.A. v. Neil, 160 F.3d 997, 1002 (4th Cir. 1998). Plaintiff argues that the court should consider similar statutes of repose - § 1-52(16) and § 1-46.1 – in which other federal courts have found that disease claims are categorically excluded from statutes of repose due to their differences from claims based on bodily injury or property damage. See Wilder, 336 S.E. 2d at 66; Hyer, 790 F. 2d at 30. In short, plaintiff contends that since both the Supreme Court of North Carolina and the Fourth Circuit have found diseases to be exempt from closely related statutes of repose, it is reasonable to find that the Supreme Court of North Carolina would similarly find N.C. Gen Stat. §1-50(a)(5) inapplicable to the claim at issue. In support of their motion to dismiss, defendant argues that plaintiff ignores the broad language of N.C. Gen Stat. §1-50(a)(5) that can be applied beyond just "personal injury," and that contains specifically enumerated exceptions to which "disease" is not included. As explained herein, the court finds that it is reasonable to conclude that diseases, such as the one suffered by plaintiff's daughter, are excluded from the statute of repose in N.C. Gen Stat. §1-50(a)(5).

First, plaintiff argues that North Carolina courts have uniformly recognized a disease exception to statutes of repose. Specifically, plaintiff points to § 1-52(16) and § 1-46.1, which are closely related to N.C. Gen Stat. §1-50(a)(5), in that § 1-52(16) governs general negligence claims that are subject to a ten-year statute of repose and § 1-46.1 pertains to other negligence claims based on product liability and subject to a twelve-year statute of repose. Plaintiff notes that in

5

Wilder, the court found that the North Carolina Supreme Court and North Carolina legislature have "long been cognizant of the difference between diseases on the one hand and other kinds of injury on the other from the standpoint of identifying legally relevant time periods," and for this reason, held that §1-15(b) (the predecessor to §1-52(16)) did not apply to claims arising from disease. Wilder, 336 S.E. 2d at 71. The court in Wilder based its reasoning on the fact that disease claims are "an intrinsically different kind of claim" from personal injury claims in that disease claims develop at the time of diagnosis rather than when the claimant was first exposed to the disease-causing agent. Id. at 70. The court further noted that it would have been "inconceivable" for the legislature to have enacted the statute in such a way that claims for injuries caused by diseases to accrue before the disease was diagnosed. Id. at 72.

To avoid this conclusion, defendant argues that the reasoning in Wilder is not applicable to the broad, all-encompassing language of N.C. Gen Stat. § 1-50(a)(5) because it is not limited to claims having bodily injury as an essential element, and the relevant time period in the real improvement statute relates to the substantial completion of the improvement, not the accrual of an injury or disease relating to the plaintiff. In making his argument, defendant relies on numerous cases which state that the purpose of the repose is to work as a barrier that "prevents a plaintiff's right of action before his cause of action may accrue." Black v. Littlejohn, 325 S.E.2d 469, 474-75 (N.C. 1985); see also Whitehurst v. Hurst Built, Inc., 577 S.E.2d 168, 170 (N.C. App. 2003) (finding the repose period begins to run when an event occurs, regardless of whether or not there has been an injury). In urging the contrary, plaintiff argues that the fact that the decision in Wilder has subsequently been reaffirmed by the North Carolina Supreme Court, provides further reasoning for using it as a guidepost in deciding the case at hand. See Leonard v. Johns-Manville Sales Corp., 340 S.E.2d 338, 340 (N.C. 1986) ("In Wilder we held that former N.C. Gen Stat. §1-

6

15(b) had no application to claims arising out of disease . . . Wilder is dispositive of this case"). Additionally, plaintiff notes that the court in Hyer followed the decision in Wilder when it held that North Carolina's product liability statute of repose N.C. Gen Stat. §1-50(6) (now recodified at N.C. Gen Stat. §1-46.1) did not apply to claims arising from disease. Hyer, 790 F.2d at 33.

The court acknowledges that, as contended by defendant, the statute at hand makes no distinction on the accrual of latent injuries from which a diagnosis of disease would be excluded. However, the fact that there is no explicit mention of the distinction does not prevent the court from following what courts have uniformly done with similar statutes. Thus, the court agrees with plaintiff and finds that, given the similarities between §1-50(a)(5), § 1-52(16), and §1-46.1, the disease exception should extend to the statute of repose for the case at hand. Additionally, the court finds compelling the fact that the Hyer decision has been applied by the Fourth Circuit in several other cases involving injuries caused by disease. See Silver v. Johns-Manville Corp., 789 F.2d 1078 (4th Cir. 1986) (asbestos related lung disease); Burnette v. Nicolet, Inc., 818 F.2d 1098 (4th Cir. 1986) (asbestos related lung disease); Guy v. E.I. DuPont de Nemours & Co., 792 F.2d 457 (4th Cir. 1986) (chronic obstructive lung disease due to exposure to diisocyanate); Bullard v. Dalkon Shield Claimants Trust, 74 F.3d 531 (4th Cir. 1996) (finding that pelvic inflammatory disease was within the disease exception to the statute of repose in 1-50(6)). In each of those cases, courts have found a disease exception to the statute of repose where the statute does not explicitly note otherwise. The court thus finds it both plausible and reasonable to hold that here, given the relevant precedent, the North Carolina Supreme Court would likely include disease within the scope of applicable exceptions.

Next, plaintiff contends that this court has previously recognized a disease exception to North Carolina statutes of repose and thus should continue to do so in this case. The court is

persuaded by the reasoning applied by the Fourth Circuit in Stahle v. CTS Corp., 817 F.3d 96, 104 (4th Cir. 2016), where the court concluded that claims based upon disease are excluded from the § 1-52(16) statute of repose as supported by "the context of North Carolina's statutory limitations and repose scheme" and "further supported by North Carolina caselaw." For example, in Gardner v. Asbestos Corp., 634 F. Supp. 609, 612 (W.D.N.C. 1986), where a plaintiff claimed an asbestos-related illness as a result of his exposure to asbestos created by the defendant, this court applied the reasoning in Wilder and found that the North Carolina Supreme Court considered diseases to be an exception to the statute of repose governing personal injury claims. Id. The court in Gardner further noted that such reasoning should hold "unless the Legislature expressly expands the language to include it." Id.; see also Jones v. United States, 751 F. Supp. 2d 835 (E.D.N.C. 2010) (declining to apply a statute of repose to bar plaintiff's disease claims). In accordance with relevant precedent, the court sees no reason to discontinue its finding that diseases are an exception to the statute of repose governing personal injury claims.

Moreover, the court acknowledges and agrees with plaintiff's assertion that the disease exception applies to plaintiff's claim regardless of her particular diagnosis. The court notes that as it stands, neither the North Carolina legislature nor the North Carolina courts have distinguished types of diseases and diagnoses. As such, the court declines to distinguish the disease exception in this particular matter.

Lastly, plaintiff argues that the legislature has repeatedly declined to include diseases in the state's statutes of repose thus making apparent that they intended for it to qualify as an exception. Plaintiff contends that in the 30 years since the Wilder decision, the North Carolina General Assembly has acted on numerous occasions to amend the various statutes of repose and limitation within Article V, but has never attempted to eliminate the disease exception from the

statues of repose. The Fourth Circuit appears to agree with this argument, stating that "we take a small measure of comfort in the fact that although Hyer and Bullard have been on the books and applied for several decades, neither the North Carolina General Assembly nor the North Carolina courts have taken exception to our expressed understanding of North Carolina law or the implications of the Wilder decision." Stahle, 817 F.3d at 103. Further, "[t]he Supreme Court of North Carolina has recognized that the legislature's decision not to amend a statute that has been interpreted by a court is some evidence that the legislature approves of that interpretation." Id. (citing State v. Ellison, 738 S.E.2d 161, 164 (N.C. 2013)).

Defendant argues, however, that the fact that no appellate court of North Carolina has found a disease exception for N.C. Gen Stat §1-50(a)(5) in conjunction with the North Carolina Legislature's expansion of the scope of the statute in 1981 to include more than just "personal injury" claims, evinces the intent of the Legislature to apply the statute to all action. In doing so, defendant primarily relies on Trustees of Rowan Technical Coll. V. J. Hyatt Hammond Assoc. Inc., 328 S.E2d 274, 280 (N.C. 1985) where the North Carolina Supreme Court held that N.C. Gen Stat. § 1-50(a)(5) "was intended to apply to all actions against architects, and others therein described, where plaintiff seeks damages resulting from the architect's faulty design or supervision, whether those damages are sought merely to correct the defect or as a result of some further injury caused by the defect." Id. at 281-82. Further, defendant notes that the statute itself contains a very detailed and specific list of enumerated exceptions that do not include disease and that the Legislature intended the list to be exhaustive. In agreeing with plaintiff, the court finds that the North Carolina legislature has had ample opportunity to modify or amend the statutes of repose to include or reference disease, and their failure to do so signifies their intent to distinguish injury claims from disease claims. As such, the court sees no basis for interpreting the legislature's

9

actions, or lack thereof, otherwise. Although the list noted by defendant may not explicitly include diseases, the court again notes that it is not persuaded that the exception cannot be read the way that other courts have read similar statutes in the past.

For these reasons, the court finds that the statute of repose codified in N.C. Gen Stat. §1-50(a)(5) does not apply to plaintiff's claim because the statute does not include diseases such as the one suffered by plaintiff's daughter. The court thus finds plaintiff's allegations are sufficiently pleaded to survive a motion to dismiss, and accordingly, defendant's motion to dismiss must be denied.

## ORDER

**IT IS, THEREFORE, ORDERED** that defendant's Motion to Dismiss for Failure to State a Claim (#53) is **DENIED**.

Signed: June 12, 2018

Max O. Cogburn Jr.
United States District Judge